UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————————

CHRISTOPHER J. DUNN,

                         Plaintiff,

            V.

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
———————————————————————————

**REPORT AND
RECOMMENDATION**

09-CV-955
(FJS/VEB)

## I. INTRODUCTION

In December of 2006, Plaintiff Christopher J. Dunn applied for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff alleges that he has been unable to work since October 31, 1999, due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through his attorneys, DeSantis & DeSantis, Michael V. DeSantis, Esq. of counsel, commenced this action by filing a Complaint in the United States District Court for the Northern District of New York. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On September 3, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 11).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB on December 8, 2006, alleging disability beginning on October 31, 1999. (T at 109-115).[1] The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on January 23, 2008, before ALJ F. Patrick Flanagan. (T at 7). Plaintiff, accompanied by attorney Michael V. DeSantis, appeared in Utica, New York and testified before the ALJ, who appeared via videoconference from Syracuse. (T at 7). On March 17, 2009, ALJ Flanagan issued a decision denying Plaintiff's applications. (T at 7-15). The ALJ's decision became the Commissioner's final decision on July 30, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

Plaintiff timely commenced this action by filing a Complaint on August 21, 2009. (Docket No. 1). The Commissioner interposed an Answer on December 29, 2009. (Docket No. 7). Plaintiff filed a Brief in support of the action on February 2, 2010. (Docket No. 9). The Commissioner filed a Brief in opposition on March 17, 2010. (Docket No. 10).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further proceedings.

---

[1]Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

## III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[2]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at

---

[2]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

146 n. 5; <u>Ferraris v. Heckler</u>, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2005. The ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 31, 1999, the alleged onset date.  The ALJ concluded that Plaintiff had the following impairments considered "severe" under the Act: degenerative disc of the lumbosacral spine, fibromyalgia, and diabetes mellitus. (T at 9).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix I (the "Listings"). (T at 12).  The ALJ determined that Plaintiff had the residual functional capacity to perform the full range of sedentary work. (T at 12).

The ALJ concluded that Plaintiff was not able to perform his past relevant work as a service station attendant. (T at 14).  Considering Plaintiff's age (35 as of the alleged onset date, 45 as of the date of the ALJ's decision), education (11th grade), work experience (unskilled), and residual functional capacity (full range of sedentary work), the ALJ found

that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (T at 14).

Accordingly, the ALJ determined that Plaintiff had not been under a disability and was not entitled to benefits from the date of alleged onset to the date of the ALJ's decision. (T at 15).  As noted above, the ALJ's decision became the Commissioner's final decision on July 30, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 1-3).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  However, the brief submitted by Plaintiff's counsel is very poorly organized.  Legal arguments are mixed together with the factual summary, making it difficult to discern the exact nature and basis of Plaintiff's arguments.  Moreover, the brief is not divided into sections separately treating each argument, as expressly required by General Order No. 18.  The brief also lacks supporting citations to the relevant pages in the administrative record.  *Plaintiff's counsel is admonished to review General Order No. 18 and to conform future briefs to its clear requirements.*  Failure to do so in future cases may result in sanctions and should be considered by the District Court Judge in this case in determining the amount of attorney's fees, should Plaintiff ultimately prevail.

As best as the Court can determine, Plaintiff raises three (3) principal arguments. First, he challenges the ALJ's determination that Plaintiff retained the RFC to perform the full range of sedentary work.  Second, Plaintiff argues that the ALJ erred by failing to properly evaluate his non-exertional impairments.  Third, Plaintiff asserts that the ALJ should have consulted a vocational expert.  This Court will address each argument in turn.

### a.    Physical RFC

6

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ concluded that Plaintiff retained the RFC to perform the full range of sedentary work, as defined in 20 C.F.R. § 404.1567 (a) and § 416.967 (a). This Court finds that the ALJ's determination in this regard was supported by substantial evidence insofar as it related to Plaintiff's exertional limitations.

Plaintiff's treating physician, D. Christopher Clark, M.D., offered contradictory assessments with regard to Plaintiff's RFC. On two occasions, Dr. Clark checked a box on an RFC assessment form indicating that Plaintiff was capable of performing sedentary work. The form defined "sedentary work" as:

> Exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking

7

and standing are required only occasionally and all other
sedentary criteria are met.

(T at 535, 539).

However, when asked to provide more specific assessments of Plaintiff's limitations,
Dr. Clark indicated that Plaintiff could stand/walk for less than 2 hours a day and sit for less
than 6 hours a day, with position changes every 30 minutes. (T at 537). Dr. Clark also
assessed Plaintiff as having "balance problems" and "some memory problems." (T at 537).

The ALJ accepted Dr. Clark's "check box" assessment of sedentary work (affording
it "great weight"), but rejected the doctor's specific findings as to Plaintiff's limitations on the
grounds that they were not supported by medical record. (T at 13-14).

The ALJ's decision to afford "great weight" to Dr. Clark's sedentary work assessment
was dubious. Dr. Clark's specific findings clearly call into question his decision to check
the "sedentary work" box on the forms. Indeed, the specific findings (which were made
contemporaneous with the completion of the check box forms) lead to the nearly
inescapable conclusion that Dr. Clark either did not understand or did not carefully review
the definition of "sedentary work" before checking the sedentary work box on the forms.
In other words, the specific findings make it clear that Dr. Clark believed Plaintiff was not
capable of performing sedentary work. Thus, the ALJ's decision to afford "great weight"
to the fact that Dr. Clark checked the sedentary work box is questionable.

However, the ALJ's overall assessment concerning Plaintiff's exertional impairments
is sustainable notwithstanding the concerns outlined above. Even if Dr. Clark's overall
sedentary work assessment is disregarded (as the result of the doctor's misunderstanding
or inattention), the ALJ's decision to reject Dr. Clark's findings as to Plaintiff's specific

8

physical limitations was supported by substantial evidence.

Dr. Clark indicated on more than one occasion Plaintiff's "current or pending" disability compensation was a possible "psychosocial cause" of his back pain. (T at 507, 513). The ALJ discussed the fact that Plaintiff received very conservative treatment for his back pain and noted that clinical findings have been largely normal. (T at 13). Plaintiff reported that he cooks daily, performs light housecleaning and laundry, and goes shopping two or three times a week. (T at 425).

In December of 2004, Plaintiff was examined by Dr. David R. Graham, who indicated that Plaintiff appeared to have "at most, a moderate degree of partial disability." (T at 335). Dr. Graham also noted that Plaintiff was using only ibuprofen to treat his pain. (T at 335). In June of 2005, Dr. Edward Sugarman performed an independent medical examination in connection with Plaintiff's application for workers' compensation benefits. Dr. Sugarman opined that Plaintiff's disability was "mild," with a limitation as to lifting more than 20 pounds and an inability to perform repetitive movements involving bending, lifting, or climbing. (T at 320).

Dr. Kalyani Ganesh performed a consultative examination in January of 2007 and assessed "[n]o gross limitations to sitting, standing, or walking." (T at 426). He found that Plaintiff had a "mild to moderate limitation for lifting, carrying, pushing, and pulling." (T at 426). In February of 2007, a State Agency medical review consultant opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; stand for about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; and push/pull without limitation. (T at 440).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining

and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of Social Security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of the examining and non-examining State agency medical consultants  are supported by the weight of the evidence.  See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

 Accordingly, this Court finds no reversible error in the ALJ's decision to reject Dr. Clark's specific findings as to Plaintiff's physical RFC.  "While the opinions of a treating physician deserve special respect, ... they need not be given controlling weight when they are contradicted by other substantial evidence ...." Veino v. Barnhart, 312 F.3d 578, 588 (2nd Cir.2002); see also Hogue v. Barnhart, No. 03-CV-4963, 2005 WL 1036336, at *14 (S.D.N.Y. 2005).  The ALJ's overall conclusion that Plaintiff retained the RFC to perform the exertional demands of sedentary work is supported by substantial evidence, as outlined above.

### b.    Mental Limitations

When evaluating mental impairments, the Regulations require the ALJ to apply a "special technique" at the second and third steps of the review in addition to the customary

10

sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).   The special technique requires an initial determination as to whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). If so, the ALJ must then rate the degree of Plaintiff's functional limitation resulting from the impairment in four broad categories: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).  A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).

In this case, the ALJ concluded that Plaintiff had medically determinable mental impairments of depression, anxiety, and substance abuse.  However, at step two of the sequential evaluation, the ALJ determined that these impairments (considered individually and in combination) did not cause more than minimal limitation in Plaintiff's ability to perform basic work activities and were therefore not "severe" limitations. (T at 11). This Court finds that the ALJ's assessment in this regard was not supported by substantial evidence.

The Second Circuit has held that the step two severity analysis is limited to "screen[ing] out de minimis claims." Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995). A "finding of 'not severe' should be made if the medical evidence establishes only a 'slight

abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In reaching his non-severe determination, the ALJ properly referenced the special technique.   However, the ALJ's application of the technique was not supported by substantial evidence.

For example, the ALJ found no limitation with respect to Plaintiff's activities of daily living. (T at  11).  In support of this finding, the ALJ referenced evidence concerning Plaintiff's ability to perform the physical activities of daily living (e.g., cleaning, laundry) and noted that Plaintiff was appropriately dressed and exhibited good hygiene and grooming when examined on a consultative basis by Dr. Ganesh. (T at 12).  However, the ALJ made no mention of treatment notes from Dr. Clark, which indicated that Plaintiff suffered from recurrent boils because he neglected to change his clothes and had to be reminded to change his underwear daily and use soap to clean his ears. (T at 495-6).  This certainly suggests at least some difficulty with regard to managing activities of daily living and, at a minimum, should have been addressed before the ALJ made a finding of "no limitation" with regard to this functional area.

The ALJ likewise found no limitation in terms of social functioning.  (T at 12).  "Social functioning refers to an individual's capacity to interact appropriately and communicate effectively with other individuals." Bergman v. Sullivan, CIV 88-513L, 1989 WL 280264, at * 4 (W.D.N.Y. Aug. 7, 1989).  The ALJ cited a single piece of evidence in support of this conclusion, namely, Dr. Kristen Barry's observation that Plaintiff's overall manner of relating and social skills were "adequate" during her consultative examination. (T at 430).  However,

12

the ALJ did not discuss Dr. Barry's further conclusion that Plaintiff had only "fair" insight and "fair to poor" judgment (T at 431) or her finding that Plaintiff "may have difficulty relating adequately with others." (T at 432).   The record established strained relations between Plaintiff and his family and some degree of social isolation. (T at 431, 493, 499).  The ALJ thus selectively quoted Dr. Barry's observation regarding Plaintiff's "adequate" social skills, without addressing her actual clinical conclusions or attempting to reconcile those conclusions with his overall assessment of no limitation as to this functional area.

The ALJ also concluded that Plaintiff had no limitation with respect to maintaining concentration, persistence, or pace. (T at 12).  In support of this finding, the ALJ referenced a single piece of evidence, namely, Dr. Barry's observation that Plaintiff's thought processes were coherent and goal-directed during the consultative exam and that his attention, concentration, and memory skills were "intact." (T at 431).

Again, however, the ALJ selectively chose a section of the record that supported his finding, while ignoring portions that supported Plaintiff's allegations.  Dr. Barry's overall assessment was that Plaintiff "may have difficulty . . . making appropriate decisions." (T at 432).  She further indicated that Plaintiff has been "dysphoric and . . . also appears to have poor judgment at times." (T at 432).  Dr. Barry noted Plaintiff's allegations that he was unable to work due to physical pain and "difficulty handling stressors" and opined that Plaintiff's allegations were "consistent with the examination results." (T at 432).  The ALJ cited one portion of Dr. Barry's report, but did not address her other findings or attempt to reconcile them with his overall conclusion that Plaintiff had no limitations in this category of functioning.

Dr. Clark, Plaintiff's treating physician, indicated on an RFC form that Plaintiff's level

13

of functioning was "abnormal" with regard to meeting quality standards and norms and sustaining adequate attendance. (T at 422).  In addition, Dr. Clark noted that Plaintiff had "some memory problems." (T at 422).  Although the form asked for an explanation regarding any  limitations characterized as "abnormal," Dr. Clark provided no such explanations and there is no indication that the ALJ re-contacted Dr. Clark to obtain further detail. Indeed, the ALJ did not even mention Dr. Clark's assessment in his step two analysis of Plaintiff's mental impairments.

The ALJ was not at liberty to simply "pick and choose" the portions of the record that supported his finding without addressing the aspects of the record favorable to the Plaintiff. See Sutherland v. Barnhart, 322 F.Supp.2d 282, 289 (E.D.N.Y.2004) (citing Lopez v. Sec'y of Dept. of Health & Human Servs., 728 F.2d 148, 150-151 (2d Cir.1984) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims."); Shaw v. Chater, 221 F.3d 126, 135 (2d Cir.2000) ("This 'pick and choose' approach to reviewing the evidence undermines the court's confidence in the ALJ's determination.").

Accordingly, this Court finds that a remand is necessary for reconsideration of the evidence concerning Plaintiff's mental impairments.  In this regard, the ALJ may find it necessary and appropriate to re-contact Dr. Clark to obtain an explanation regarding the "abnormal" findings with regard to meeting quality standards and norms and sustaining adequate attendance.  Complete consideration should also be given to Dr. Barry's consultative report and, in particular, her clinical findings with regard to Plaintiff's mental limitations.

14

c.      **Reliance on the Grids**

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling."  Id. at 667 n. 2; see 20 C.F.R. §

15

404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ used the Grids in reaching his disability determination.  (T at 15).  As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. Pratts, 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06).  When nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminishes the claimant's work capacity beyond that caused by his or her exertional limitations. Id.  A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15.  "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.

In this case, the ALJ concluded that Plaintiff's mental impairments were non-severe and, thus, did not make any finding with regard to whether Plaintiff's non-exertional impairments significantly diminished his work capacity.  For the reasons outlined above, the ALJ's conclusion that the mental impairments were non-severe at step two of the sequential evaluation process was flawed and should be revisited on remand.  As such, the step five analysis concerning Plaintiff's non-exertional impairments will likewise need to be reconsidered on remand.  To the extent those impairments are found to significantly diminish Plaintiff's work capacity beyond that caused by his exertional impairments, consultation with a vocational expert may be required.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

### IV. CONCLUSION

17

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for judgment on the pleadings be GRANTED, the Commissioner's motion be DENIED, the decision of the Commissioner be reversed, and that this case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Dated:   November 18, 2010
         Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE**

18

**OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

November 18, 2010

Victor E. Bianchini
United States Magistrate Judge